Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCN. JOSÉ RAFAEL NET FERNÁNDEZ<br><br>Parte Apelada<br><br>v.<br><br>SUCN. FELIX FONTANEZ OLMO Y OTROS<br><br>Parte Apelante | TA2025AP00361 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: KAC2017-0370<br><br>Sobre: Deslinde y Amojonamiento |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de mayo de 2026.

Comparecen ante *nos* Luis A. Rosario Rodríguez, Iris E. Rosario García, Elsa Y. Rosario García, Yolanda Rosario García, Luis E. Rosario García, Nelson D. Rosario García y Arnaldo Rosario García (en conjunto, parte demandada o apelante) y nos solicitan que revisemos y revoquemos la *Sentencia* emitida el 14 de agosto de 2025 y notificada el 21 de agosto de 2025, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de San Juan. Mediante dicho dictamen, el TPI declaró *ha lugar* a la *Demanda* de epígrafe.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I.**

Según surge del expediente, el caso de autos se originó el 21 de abril de 2017, cuando el Sr. José R. Net Longo, en representación de la Sucesión de José Rafael Net Hernández (parte demandante o apelada) instó una *Acción de Deslinde* contra la Sucesión Félix

Fontánez Olmo, Minerva Fontánez Pastrana, Luis Rosario y Elsa E. Rosario. En esta alegó que las partes codemandadas realizaron movimientos de terreno en sus propiedades que afectaron la demarcación de los linderos de las propiedades que le pertenecían, por lo cual solicitó al tribunal que emitiera una orden para la mensura y deslinde de dichas propiedades.

Posteriormente, el 2 de abril de 2018, la parte demandante presentó la *Acción de Deslinde Enmendada*. Luego, el 2 de julio de 2018, radicó una *Segunda Acción de Deslinde Enmendada*. Dichas enmiendas tuvieron como propósito identificar e incorporar al pleito a todos los miembros de las sucesiones involucradas.[1]

Luego de varias incidencias procesales que resultan innecesarias pormenorizar, el 13 de diciembre de 2023, se celebró una vista sobre el estado de los procedimientos en la cual ambas partes tuvieron la oportunidad de exponer sus respectivas posturas respecto a la controversia de epígrafe. En dicha ocasión, la parte demandada manifestó que contaba con tres (3) peritos, pero que en ese momento solo estaba disponible el Agrim. Sousa Gallardo. Ese mismo día, el foro primario ordenó, *inter alia*, a los peritos que se reunieran en el campo ("*field*") para discutir sus respectivas mediciones y tratar de llegar a un punto de consenso.

El 15 de febrero de 2024, la parte demandada presentó una *Moción Informativa sobre Reunión entre Abogados*, mediante la cual

---

[1] La parte demandante estuvo compuesta por María Consuelo Longo Díaz, José R. Net Longo y Sheila Net Longo, por sí y en representación de la Sucesión de José Rafael Net Fernández. De otro lado, las partes codemandadas estaban divididas en las siguientes familias:
Sucesión de Félix Fontánez Olmo:
    (1) Elba Pastrana
    (2) Minerva Fontánez Pastrana
    (3) Yolanda Fontánez Pastrana
    (4) Alfredo Cotto
Sucesión de Elsa García de Rosario:
    (1) Luis Alberto Rosario Rodríguez
    (2) Iris Evelyn Rosario García
    (3) Elsa Yvette Rosario García
    (4) Luis Edgardo Rosario García
    (5) Nelson David Rosario García
    (6) Arnaldo Rosario García
    (7) Yolanda Rosario García.

indicó que los peritos se reunieron para dialogar sobre sus respectivas posiciones periciales, pero no lograron establecer acuerdos sobre puntos o mediciones. Asimismo, informó que los representantes legales de ambas partes se reunieron y acordaron lo restante relacionado con el descubrimiento de prueba. A tenor con ello, el foro primario emitió una *Orden* el 22 de febrero de 2024 aprobando el calendario de descubrimiento de prueba anunciado por las partes.

Más adelante, el 21 de marzo de 2024, la parte demandada presentó una *Moción sobre Sustitución de Perito*, mediante la cual informó que el Ingeniero Héctor Alvarado (Ing. Alvarado), uno de los agrimensores que mensuró la propiedad, no estaba disponible para declarar como perito en el juicio, por lo que anunció que presentaría como testigo pericial al Agrimensor Benigno Rodríguez Burgos (Agrim. Rodríguez Burgos).

Por su parte, el 26 de marzo de 2024, la parte demandante presentó una *Oposición a Sustitución de Perito Anunciada por los Demandados y en Solicitud de Órdenes*. En esta argumentó que el anuncio de un nuevo perito en una etapa avanzada del procedimiento debía ser rechazado de plano. Señaló además que el perito cuya sustitución se pretendía, el Ing. Alvarado, había sido anunciado por los demandados miembros de la Sucesión Fontánez, quienes no estaban representados por los abogados comparecientes, por lo que su comparecencia mediante la referida moción debía darse por no puesta. Añadió que la parte demandada no había comunicado previamente la sustitución, por lo que el anuncio de un nuevo perito luego de culminado el descubrimiento de prueba resultaba improcedente.

Así las cosas, el 27 de marzo de 2024, las partes presentaron conjuntamente el *Informe Preliminar entre Abogados y Abogadas*. Mediante este, la parte demandante anunció como perito al

Agrimensor Abiud Reyes (Agrim. Reyes), mientras que la parte demandada anunció a los agrimensores Sousa Gallardo y Rodríguez Burgos, aun cuando este último no había sido autorizado por el tribunal.

El 1 de abril de 2024, la parte demandada presentó una *Réplica a Moción de la Parte Demandante [...]*, mediante la cual reconoció haber incluido por error los nombres de ciertas partes que ya no representaba, pero reiteró su intención de utilizar como perito al Agrim. Rodríguez Burgos. Indicó que este testificaría únicamente en relación con los trabajos realizados por el Ing. Alvarado y el Agrim. José A. Rivera, cuyos informes habían sido entregados a la parte demandante como parte del descubrimiento de prueba.

El 2 de abril de 2024, se celebró la vista de Conferencia con Antelación al Juicio, en donde las partes argumentaron la controversia relativa a la sustitución de peritos. El foro primario indicó que resolvería por escrito y señaló el juicio para los días 9 al 12 y 16 y 17 de septiembre de 2024.[2]

Posteriormente, el 2 de mayo de 2024, la parte demandada presentó una *Moción Informativa* en la cual indicó que, durante una reunión celebrada el 23 de abril de 2024, el Agrim. Sousa Gallardo le informó que padecía de una condición de salud que le impediría continuar como perito y participar del juicio. Así, la parte demandada informó que estaría comunicando al tribunal todo lo que aconteciera sobre dicho asunto. No obstante, omitió indicar quién sería el perito sustituto.

En respuesta, el 14 de junio de 2024, la parte demandante presentó una *Moción en Cumplimiento de Orden y Reiteración de Oposición a Sustitución de Perito de los Demandados*. En esta

---

[2] No obstante, el 20 de junio la parte demandada instó una *Moción Aclaratoria [...]* mediante la cual solicitó que se diera por no presentada la moción instada el 21 de abril de 2024.

argumentó que la solicitud era tardía, por haberse presentado luego de finalizado el descubrimiento de prueba, y que no existía justa causa para la sustitución. Además, sostuvo que la solicitud constituía una táctica dilatoria o un intento de obtener una ventaja indebida en el litigio, lo que incidiría en su preparación para el juicio.

El 20 de junio de 2024, la parte demandada presentó una *Moción Informativa y en Solicitud para que se Permita Sustitución de Perito*, en la cual indicó que había confirmado que el Agrim. Sousa Gallardo había cerrado su oficina. Por ello, reiteró su petición para que se le permitiera sustituir su perito, alegando que, de lo contrario, estaría en un estado de indefensión para el juicio pautado.

Trabada así la controversia, el foro primario emitió una *Orden* señalando una vista urgente para el 2 de julio de 2024. En dicha vista, la parte demandada indicó que sustituiría al Agrim. Sousa Gallardo por el Agrimensor Gilberto Rosario (Agrim. Rosario). Sin embargo, el tribunal se reservó su determinación.

Posteriormente, el 20 de agosto de 2024, la parte demandada presentó una *Moción sobre Petición de Sustitución de Perito*, reiterando su solicitud ante la proximidad del juicio señalado para el 9 de septiembre de 2024.

Así las cosas, el 26 de agosto de 2026, el foro de instancia emitió una *Resolución* mediante la cual declaró *no ha lugar* la solicitud de sustitución de perito por resultar tardía y carecer de justificación. No obstante, el 5 de septiembre de 2025, dicho tribunal emitió una *Resolución en Reconsideración* mediante la cual permitió a la parte demandada presentar como perito al Agrim. Rosario, sujeto a que, dentro del término de veinticuatro (24) horas, proveyera su *currículum vitae* a la representación legal de la parte demandante y que su testimonio se limitara al informe del Agrim. Sousa Gallardo, sin variar sus conclusiones ni presentar un informe independiente.

Inconforme con el referido dictamen, el 6 de septiembre de 2024, la parte demandada compareció ante este foro intermedio mediante un recurso de *certiorari* en el caso *KLCE202400964*. El 30 de octubre de 2024, este foro emitió *Resolución* denegando la expedición del auto, al concluir que la comparecencia del Agrim. Rosario, bajo las condiciones impuestas, no constituía un abuso de discreción ni una actuación parcial o manifiestamente errónea.

Así las cosas, el juicio en su fondo se llevó a cabo los días 17 al 19 de marzo de 2025. Durante el juicio, ambas partes vertieron prueba testifical y pericial, a través del testimonio de ocho (8) testigos, y diversa prueba documental.

Examinada la prueba desfilada ante sí, el 14 de agosto de 2025, el foro primario emitió la *Sentencia* que hoy revisamos. Mediante su dictamen, el TPI declaró *ha lugar* la demanda y ordenó, *inter alia*, que se marcaran las colindancias de la servidumbre de paso y de las fincas en controversia conforme a los linderos establecidos por el Agrim. Reyes.

En su determinación, el foro primario indicó que no le mereció credibilidad el testimonio pericial del Agrim. Rosario, por entender que su análisis se limitó a la comparación de planos sin realizar mensura. En cambio, otorgó mayor credibilidad al testimonio del Agrim. Reyes, quien sí efectuó la mensura, determinó los linderos y ubicó las servidumbres conforme a las coordenadas correspondientes. Añadió que, mediante inspección ocular, pudo constatar que era imposible que la servidumbre comenzara en el punto señalado por la parte demandada, ya que en dicho lugar observó un área profunda con presencia de agua y árboles robustos y antiguos, lo que evidenciaba que nunca existió un camino en ese punto, sino en el lugar indicado por el Agrim. Reyes.

En desacuerdo, el 22 de septiembre de 2025, la parte apelante compareció ante *nos* mediante *apelación* alegando la comisión del siguiente error:

> **ERROR:** El TPI erró y abusó de su discreción al declarar con lugar la demanda de acción de deslinde tras limitar irrazonablemente el testimonio del nuevo perito de las partes codemandadas luego de que el perito original adviniera incapaz de participar en el proceso judicial por padecer de problemas neurológicos según evidenciado mediante certificación médica, colocando así a las partes codemandadas en estado de indefensión y violándoles su derecho constitucional al debido proceso de ley.

El 2 de octubre de 2025, pero notificada al día siguiente, emitimos una *Resolución* mediante la cual le concedimos, entre otras cosas, un término de treinta (30) días a la parte apelante para presentar la transcripción de la prueba oral, así como un término de treinta (30) días a la parte apelada para presentar escrito en oposición al recurso, a contarse a partir desde que se acogiera la transcripción presentada.

Luego de varias incidencias procesales, el 18 de diciembre de 2025, ambas partes presentaron conjuntamente la transcripción de la prueba oral. Por su parte, en cumplimiento con nuestra directriz, el 19 de enero de 2026, la parte apelante presentó su *Alegato Suplementario*. Posteriormente, el 30 de enero de 2026, la parte apelada presentó su escrito intitulado *[...] Alegato en Oposición a la Apelación y al Alegato Suplementario*.

Contando con el beneficio de la comparecencia de todas las partes, así como la transcripción de la prueba oral, procedemos a resolver.

## II.

### A. Doctrina de la ley del caso

La doctrina de la ley del caso postula que, como norma general, un tribunal debe seguir sus decisiones en casos posteriores. *Pueblo v. Serrano Chang*, 201 DPR 643, 653 (2018). Lo anterior

implica que los derechos y las obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 606 (2000). Además, "los planteamientos que han sido objeto de adjudicación por el foro de instancia o por este Tribunal no pueden reexaminarse". *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005).

Así pues, una determinación judicial adquiere el carácter de ley del caso al advenir una decisión final en los méritos de la cuestión considerada y decidida. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 201 (2020). Por tanto, esa determinación obliga tanto al tribunal de instancia como al que la dictó, si el caso vuelve ante su consideración. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 9 (2016).

Ahora bien, esta doctrina opera al servicio de la justicia, por lo que, no es férrea ni de aplicación absoluta. *Mgmt. Adm. Servs. Corp. v. ELA*, *supra*, pág. 608. Véase, también, *Noriega v. Gobernador*, 130 DPR 919, 931 (1992). En efecto, si el caso retorna al tribunal mediante los mecanismos apropiados, y este entiende que sus determinaciones previas son erróneas y que podrían causar una grave injusticia, puede aplicar una norma de derecho distinta y así resolver de forma justa. *Berkan et al. v. Mead Johnson Nutrition*, *supra*, pág. 201.

Por consiguiente, cuando se presenta un atentado contra los principios básicos de la justicia, los tribunales pueden descartar la aplicabilidad de la doctrina de la ley del caso. *Cacho Pérez v. Hatton Gotay, supra,* pág. 10. De lo contrario, nos corresponde resistirnos a reexaminar asuntos ya considerados dentro de un mismo caso en aras de salvaguardar el trámite ordenado y expedito de los litigios, así como promover la estabilidad y la certeza de derechos. *Berkan et al. v. Mead Johnson Nutrition, supra*, págs. 200-201. Véase, también, *Mgmt. Adm. Servs. Corp. v. ELA, supra*, pág. 608.

Ahora bien, la denegatoria de un tribunal apelativo a expedir el auto de certiorari en asuntos interlocutorios no implica la ausencia de error en el dictamen cuya revisión se solicita, ni constituye una adjudicación en los méritos. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008); *Bco. Popular de PR v. Mun. de Aguadilla,* 144 DPR 651, 658 esc. 2 (1997). Por ende, en dichos casos no aplica la doctrina de la ley del caso. *Cacho Pérez v. Hatton Gotay, supra,* pág. 10.

## B. Acción de deslinde

El Artículo 319 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1211, dispone que "todo propietario tiene derecho a pedir el deslinde de su propiedad, con citación de los dueños de los predios colindantes. La misma facultad corresponderá a los que tengan derechos reales."[3] Por su parte, el Artículo 320 del Código Civil de 1930, 31 LPRA ant. sec. 1212, establece que: "[e]l deslinde será en conformidad con los títulos de cada propietario, y a falta de títulos suficientes, por lo que resultare la posesión en que estuvieren los colindantes."

Así, la acción de deslinde y amojonamiento tiene el propósito de determinar los linderos confundidos de dos heredades contiguas. *Ramírez Quiñones v. Soto Padilla,* 168 DPR 142, 157 (2006); *Zalduondo v. Méndez,* 74 DPR 637, 641-642 (1953). Dicha acción está disponible a "todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un sólo juicio [...]". *Ramírez Quiñones v. Soto Padilla, supra,* pág. 158; *Arce v. Díaz,* 77 DPR 624, 627-628 (1954).

---

[3] Aunque el Código Civil de 1930 fue derogado por la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020, hacemos referencia al primero por ser el que estaba en vigor a la fecha de la controversia de autos.

La acción de deslinde tiene dos características distintivas: (1) pretende individualizar los inmuebles, sin determinar, directamente, quién es su dueño; y (2) no discute la validez ni la eficacia de los títulos, sino que se dirime su interpretación. En virtud de estas características, el deslinde "no da ni quita derechos". *Ramírez Quiñones v. Soto Padilla, supra*, pág. 159. Además, por ser una acción de naturaleza declarativa, es imprescriptible. Artículo 1865 del Código Civil de 1930, 31 LPRA ant. sec. 5295. De modo que cualquier titular puede presentar varias veces y contra cualquier persona una acción de deslinde, "siempre que existan nuevas causas que lo justifiquen". *Ramírez Quiñones v. Soto Padilla, supra*, pág. 158; *Zayas v. Autoridad de Tierras*, 73 DPR 897, 901 (1952). Ello presupone que por una causa exista confusión en cuanto a los linderos y estos no hayan sido establecidos judicialmente.

Ahora bien, el deslinde debe realizarse conforme a los títulos de cada propietario. De no haber títulos suficientes se puede hacer el deslinde de lo que resultare de la posesión de los colindantes. Artículo 320 del Código Civil de 1930, 31 LPRA ant. sec. 1212. Ello establece una jerarquía de métodos de prueba, pues "aplicar el criterio de la posesión depende de que no haya títulos, o de que, aún habiéndolos, sean insuficientes." *Ramírez Quiñones v. Soto Padilla*, supra, págs. 159-160.

**C. Apreciación de la prueba**

En materia de apreciación de la prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del

juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

Por ello, esta Curia evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V; véase *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986). Por tanto, como foro apelativo, ni debemos intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que realiza un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 341 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que, el foro de instancia es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR*, *supra*; véase

*Trinidad v. Chade,* 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy, Inc.,* 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de las de Procedimiento Civil, *supra;* véase *Rivera Menéndez v. Action Services, supra,* págs. 448-449; *Monllor Arzola v. Soc. de Gananciales,* 138 DPR 600 (1995). No obstante, si de un examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer PR, Inc. v. Rodríguez,* 100 DPR 826, 830 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez et al. v. López Jiménez et al.,* 116 DPR 172, 181 (1985).

### III.

En el caso que nos ocupa, la parte apelante arguye que erró el TPI al declarar con lugar la demanda de acción de deslinde, tras limitar a su juicio, de forma irrazonable, el testimonio de su perito sustituto luego de que el perito originalmente anunciado adviniera incapaz de participar en el proceso judicial por padecer de problemas neurológicos, según acreditado mediante certificación médica. Sostiene que dicha actuación le colocó en un estado de indefensión y vulneró su derecho constitucional al debido proceso de ley.

Cónsono con lo anterior, plantea que el foro de instancia impuso restricciones irrazonables que le privaron de presentar prueba esencial en un litigio de deslinde, en el cual el peritaje en agrimensura resulta indispensable por disposición expresa de ley. Asimismo, arguye que el propio tribunal la colocó en un estado de indefensión y luego, en su sentencia, resaltó las deficiencias que,

según afirma, fueron provocadas por las limitaciones impuestas. En consecuencia, concluye que dichas restricciones incidieron directamente en el valor probatorio del testimonio pericial y, por ende, en su derecho al debido proceso de ley y a presentar prueba. Así, solicita que devolvamos el asunto al foro primario, de manera que se le permita preparar, desarrollar y presentar la prueba pericial sin restricciones.

Por su parte, la parte apelada argumenta que el resultado adverso para la parte apelante no fue consecuencia de la limitación impuesta al testimonio del perito sustituto, sino del hecho de que esta compareció con un informe pericial deficiente, el cual intentó subsanar mediante la presentación de nuevo testimonio pericial. En ese sentido, sostiene que la parte apelante se encontraba en la misma posición procesal en la que habría estado si hubiese comparecido el propio Agrim. Sousa Gallardo como su perito. Además, añade que fue la propia parte apelante quien relegó a su perito a un "rol meramente accesorio", al no desarrollar un interrogatorio directo que permitiera al Agrim. Rosario explicar el trabajo realizado por el Agrim. Sousa Gallardo y fundamentar, por qué, a su juicio pericial, las conclusiones alcanzadas eran válidas.

De entrada es menester puntualizar que en el presente caso la doctrina de ley del caso no resulta aplicable. Si bien la controversia relacionada con la sustitución del perito fue previamente traída ante este foro intermedio mediante recurso de *certiorari*, lo cierto es que la expedición del auto fue denegada, por lo que no se emitió una determinación en los méritos que vincule la adjudicación del presente recurso.

Ahora bien, tras un examen detenido y minucioso del expediente, colegimos que no le asiste la razón a la parte apelante al sostener que el tribunal de instancia abusó de su discreción al limitar el testimonio del perito sustituto, ni que dicha actuación la

colocó en un estado de indefensión en violación a su derecho al debido proceso de ley. *Veamos.*

En primer lugar, surge del expediente que el foro primario sí permitió la comparecencia de un perito sustituto, a pesar de que la solicitud de sustitución se produjo en una etapa avanzada del procedimiento, luego de culminado el descubrimiento de prueba y con el juicio ya calendarizado. No obstante, condicionó dicha sustitución a que el testimonio del nuevo perito se limitara al informe previamente preparado por el Agrim. Sousa Gallardo, sin alterar sus conclusiones ni presentar un nuevo informe.

Dicho proceder, lejos de constituir una actuación arbitraria, respondió a un ejercicio legítimo de la discreción judicial dirigido a salvaguardar la integridad del proceso adjudicativo, evitando que una de las partes introdujera, en una etapa tardía, teorías periciales nuevas que no fueron objeto de descubrimiento de prueba. De esta forma, el tribunal sopesó y armonizó el derecho de la parte demandada a presentar su prueba pericial con el derecho de la parte demandante a no enfrentarse a una prueba sorpresa en el juicio. Así, el foro recurrido se aseguró de que ninguna parte quedara en un estado de indefensión y procuró que el juicio se llevara a cabo después de un dilatado proceso judicial.

Contrario a lo planteado por la parte apelante, esta no quedó en un estado de indefensión, toda vez que tuvo la oportunidad de presentar, mediante el perito sustituto, el contenido del informe pericial previamente divulgado en el descubrimiento de prueba. Es decir, pudo someter a la consideración del tribunal la evidencia pericial en que sustentaba su teoría del caso. Además, el expediente demuestra que las partes tuvieron suficiente tiempo para preparar sus respectivos planos de mensura y ejercer adecuadamente el descubrimiento de prueba. Si dicho testimonio no resultó persuasivo al juzgador, ello no es atribuible a una limitación

indebida impuesta por el tribunal, sino a la forma en que la prueba fue presentada y desarrollada durante el juicio.

De otra parte, el foro primario, en su función adjudicativa, realizó un ejercicio de valoración de la prueba al evaluar tanto la prueba pericial presentada por ambas partes como sus propias observaciones producto de la inspección ocular en los predios en controversia. En ese contexto, determinó otorgar mayor credibilidad al testimonio del perito de la parte demandante, quién realizó la mensura correspondiente, frente al perito de la parte demandada, cuyo análisis se limitó a la evaluación de planos.

Como sabemos, es norma firmemente establecida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. *Ortiz Ortiz v. Medtronic, supra*, pág. 778.

En fin, luego de un detenido análisis de la totalidad del expediente ante nuestra consideración, incluyendo la transcripción de la prueba oral vertida en el juicio, resolvemos que no existe criterio alguno que nos motive a intervenir con el dictamen apelado. Ciertamente, la determinación apelada no demuestra que hubo abuso de discreción en su adjudicación. Tanto el expediente judicial como la evidencia documental y testifical desfilada, así como la transcripción de la prueba oral sometida, demuestran que el pronunciamiento del cual se apela es uno razonable y conforme al Derecho vigente. Tampoco surge que el foro apelado hubiese actuado de forma prejuiciada o parcializada al limitar el testimonio del perito de la parte demandada; ni que existiese algún error craso en su proceder. Por tanto, no se cometió el error señalado por la parte apelante.

## IV.

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones